Good morning, gentlemen. This is the case of Maine v. ADM Mining Co. 420-0313. And as you indicated, this is recorded. So if for some reason I lose connectivity or there is a problem, please be assured that I will listen to the oral argument. I would like for the appellant to please state your name for the record. Jerry Stocks. Thank you. And for the appellee? David McGinley. Thank you. You may proceed. Thank you, Your Honor. Again, Jerry Stocks on behalf of the appellants. This appeal seeks first on the issues of fault for a new trial on the basis that the manifest weight of evidence. First, I'll address the legal inconsistency. This is a premises liability case and ADM's liability, if any, would be measured by the Restatement Sec. 343 in the cases that have adopted that standard. And I want to focus on sub-element B of that rule that says that there's liability if ADM should expect that they or the plaintiff or here the entrant to the premises will not discover or realize the danger or will fail to protect themselves against it. And in this case, we had the admissions of the plaintiff that he not only discovered, he realized the danger and actually had appreciated that his condition presented a hazard that he had to reconcile or negotiate. So why wouldn't ADM be out on an open and obvious rule? They weren't because what was invoked and how the jury was instructed was an exception to the rule of no liability that ADM essentially could anticipate or foresee that the plaintiff would nonetheless engage the condition. We assert that there's a legal inconsistency in the return of a verdict finding no liability or no fault on the part of Maine because ADM has liability only if they could foresee that Maine would not protect himself. Maine did not protect himself. So in a case where you are asserting the deliberate encounter exception, it's axiomatic that there has to be fault on the part of the plaintiff who has an equal duty to protect himself. And here, the plaintiff did not protect himself. The exception is not an... Yes. I'm sorry to interrupt you. If you could just bookmark where you're at there. That specific statement that you made, that it's axiomatic that the plaintiff is then also at fault. Is there... And I want to separate this out from what will come later, which is your argument that the jury's failure to find contributory negligence was against the manifest way to the evidence. Putting that aside right now, this argument that you're making that the jury was required to find comparative fault in order for it to be consistent with the finding of the deliberate encounter exception. Is there any case out there that specifically says that, or would we be the first to say that? This is our extension from Lefevre, the case that recognizes the exception. I am unaware of a specific appellate level case where we have a situation where a plaintiff was not found contributory negligent for encountering a known hazard and asserting this exception. So we look at Lefevre as saying that we recognize the exception to the rule of no liability because it is not an exoneration of the plaintiff's duty, which is a duty to exercise ordinary care for himself, for the choice made. Rather, it is an exoneration, or excuse me, it is exception to the rule of law that exonerated us from liability in the first instance. So we submit that the exception is not even recognized in Lefevre if a plaintiff can exonerate himself of his breach of duty. Keep in mind that premises liability is dependent upon an unreasonably dangerous condition on the premises. And both parties want ADM to anticipate the plaintiff wouldn't protect himself. Two, the plaintiff's duty to protect himself from what? The common denominator is the unreasonably dangerous condition. A conclusion that subjectively says, well, we will hold one responsible for encountering that same premises liability condition, but not the other, is inconsistent. And we take it another layer, is that when ADM is responsible for not anticipating or protecting the plaintiff for a choice it should know the plaintiff would make, the plaintiff is still making that choice to encounter the condition. And while this may or may not dovetail on the, well, for legal inconsistency, I'll stay on that specifically. As we view the Lefevre case that recognized the exception, yes, they recognize that these are two duties, one of the plaintiff, one of the defendant. But they're only imposing that duty or that liability because the plaintiff is marching forward and choosing to encounter the condition. So two parties facing the same condition should have the same rule of law regarding a duty to protect, but two different conclusions. Well, where counsel do you get the, where do you get the concept that in order for there to be recovery under the deliberate encounter exception, that the condition be unreasonably dangerous? Where does that come from? Under 343 Ward, the premises liability principles, is that if a condition is innocuous, if it is not a condition that a party doesn't present a risk of harm to a party because of its innocuous nature, there's no liability in the first instance. So this jury has had to march through to find any negligence on the part of defendant. They under 343 have to find that the condition at issue presents a unreasonable risk of harm. Why is that unreasonably dangerous? Where did you get that language? I say, as you read through the body of premises liability case, like that language is often interchangeable, but an unreasonable risk of harm, so that is unreasonably dangerous. So we might be word choice, but an unreasonable risk of harm because of a condition on the premises, that same unreasonable risk of harm existed for all parties. Usually, that unreasonable risk of harm, when known by a plaintiff, prevents liability on the part of the premises owner. When the exception is invoked to that rule, it is not an exoneration of the plaintiff's duty to protect himself. Rather, it is an exception which finds its, or is informed under subsection B of restatement 343, where they say the landowner should expect that the inferent will not discover or realize the danger, doesn't apply here because of the admissions of Roger Maine, that he knew it and realized the danger, or two, will fail to protect themselves against it, which is why he did by deliberately encountering it. I'd also note more specific as well to your question, your honor, is that B calls the unreasonable risk of harm a danger. So when I say those terms are used synonymously in the body of premises liability case law, you will see unreasonably dangerous, unreasonable risk of harm, and even within 343 itself, there's an equivalency stated to those terms. So a plaintiff has to first prove that the condition is unreasonably dangerous or an unreasonable risk of harm. And to find that that same condition, which is the that would be negligent, if ADM was negligent, not protecting against that harm, and the plaintiff deliberately and knowingly encountered that harm, both would have a negligence allocation. The verdict did not allocate any fault. Now a jury could have come back said 99-1, 50-50, 60-40. That's a different question here. This jury never got to the question of allocation. And we submit that the underpinnings of the deliberate encounter exception cannot recognize or tolerate a scenario where there would not be a sharing or an allocation of fault, because two parties are involved in the same condition, one knowingly and deliberately encountering it, which is the whole reason he's accepted or his cause of action even survived, if it was an open and obvious condition. Mr. Stark, IPI in terms of 120.09, that's the combined issues burden instruction. It doesn't mention anything about the jury being required to find contributory negligence, doesn't reference any specific type of verdict form that would require that the jury find some contributory negligence. Is there anything in IPI that is relevant to your argument that supports your argument that the jury is required to find plaintiff contributorily negligent if they find all of those propositions that are set forth in 120.09? There isn't that language. But here would be the problem there is there first must be the progression of findings to even have liability on the part of the defendant or the premises owner. So you're putting a condition in an instruction that I believe could tilt the balance and it is speculative until there is the first verdict. For example, the question as to whether a plaintiff is guilty of comparative fault never is addressed unless there first is a finding of fault on the part of the defendant. And then you're going to load a mandatory finding in the alternative to the other instructions that are needed to repose to the jury the power to allocate and balance degrees of fault. And so you get into a situation as how exacting or confusing will your IPIs become if you're saying, okay, if you find it here, then you must find negligence on the part of the becomes a cumbersome instruction when the jury has not per se been misinstructed on the law that they view what the fault is and whether the plaintiff can establish its deliberate encounter exception to the rule of no liability. And then the instructions counsel. Counsel, you're asking us to impose that without the jury ever having been instructed on it. Actually, the jury was instructed on the issues of comparative fault and was instructed on the ability to do the allocation of fault. So it's not like you're asking the jury to do something that wasn't within their province and that they were not instructed on. What is tested here is that the result they came back with, which an inconsistent verdict only tested once the verdict is in, was inconsistent in the first instance legally. And then in the next point I'll make as against the manifest way. Mr. Stocks, another question for you, and it may be a segue into the next argument in regards to manifest weight. But in Lefevre, the Supreme Court referenced an illustration to the restatement section 343A. It was the illustration that involves the owner of a commercial space, the lessor of the commercial space, and the lessor employs employee. And employee is going to work in the lease space. And in order to get to her leased office, must cross a slippery waxed stairway. It's the only way to get to her office. And slips and falls and is injured. This is the illustration for the deliberate encounter exception. And there the illustration says that the owner of the building is then subject to liability to the employee. In that illustration, are you saying that a jury confronted with the same set of facts would have to find the employee guilty of some degree of contributory negligence? Yes, because the duty for that plaintiff to protect herself from that condition or to not encounter it at all remained the choice of that plaintiff when invoking this rule. Doesn't that ignore the restatements rationale supporting the deliberate encounter exception, which was that it exists because the employee's only alternative to taking the risk was to forego her employment. And that is not something that is reasonable. The exception is not an exoneration of the plaintiff's duty to exercise ordinary care for their own safety. What if the plaintiff in that illustration given by Justice Harris hangs on to the handrail, wipes her shoes, buys a special pair of shoes, sort of like turf shoes for turf and baseball, so that they're not slippery and she still falls. Has she done what was reasonable under the circumstances given that that was the only entrance to her employment? She still made the election, even though we could foresee she would choose to do that. That's what triggers our liability. But her duty to exercise ordinary care still remains that she elected to negotiate or embrace the condition. So it's one thing to say, listen, you don't get a free ride premises owner because the condition is obvious. Rather, you should anticipate they will encounter it. That's that side of the equation. The fact remains is that the plaintiff knowingly encountered a dangerous condition, fully aware of not only its existence and the dangers it presented, which dovetails into our next component here is that we have something more in this case. And this is that something more part of it. Let's say now that illustration instead of one stairway for that employee to get to her office actually has two stairways that she can choose between. And the one stairway would lead her across or require that she traverse this slippery wax floor. But the other stairway could be accessed without walking across that slippery wax floor there. There is an option. Are you saying that that's what we're confronted with here? Because Maine had the option to proceed in a different safe way? Exactly. He had and this is the Rhodes case that we cite. And the fact that it was before the advent of comparative fault, we think is of no consequence. In fact, it's probably more persuasive because it is because contributory negligence would have been a bar then. But they find is when you have safer alternatives and you don't follow them. And the evidence in this case was specifically asked of Roger Maine. Did anyone tell you you could not pull forward six feet to avoid this condition? He said no. He knew the condition. He alone knew that he had wet wheat mids on his feet. He alone knew they were slippery. He alone attempted to knock them off. The wet wheat mids were not on the pipe he stepped on from which he slipped. Rather, they were on his boots. He knew he had to hang on to his truck. He pulled his hands away and did not hang on to his truck and fell into the trench, presenting the very danger he previously had appreciated and knew was a danger at the time. And he made the choice based on his admissions, not a balancing of is premised upon the universe of the admissions of Roger Maine. And he admitted that he could have pulled six, 10 feet forward, a couple seconds, and avoided this condition that he knew altogether. And for that reason, all those factors, the actual knowledge of the harm, risk of harm, and the availability of alternative, that a finding that he did not have some degree of manifest way. There's my time. I know it's fast escaping on the damages. I want to make a comment or two on that is again, that's when you look at the factors in the tyranny case upon which we rely, we see, I see my time is up and I will try to figure out how to silence myself. Thank you. Council for the appellee. Let's proceed. Good morning, your honors. May it please the court. My name is David McGinley. I represent the appellee Roger Maine in this matter. The appellant ADM is not entitled to a new trial for three reasons. First, the verdict is not legally inconsistent. Second, the evidence supported the jury's finding that Roger Maine exercised ordinary care. And third, the award bore a reasonable relationship with the loss suffered in the supporting evidence. First, the verdict was not legally inconsistent for a verdict to be legally inconsistent. There must be some common element between the two offenses. One found to be true in one offense. And that same con element found to be not true in the other. In this case, there is no common element that defines the duty of the defendant as well as the duty of the plaintiff. The proposition for a deliberate encounter exception that must be proven by the plaintiff is that the defendant could reasonably expect that a reasonable person in plaintiff's position, knowing of the condition would encounter the condition. Proving this proposition does not It does not confess any fact related to Roger Maine, as this proposition uses the objective standard. In fact, this proposition itself doesn't establish defendant's fault. Plaintiff must still show breach. The elements of a defendant's duty, and as importantly, its breach do not share a common element within the propositions required of the defendant to prove contributory negligence. Appellant had argued that the condition itself is a proposition that is common. The proposition of a condition being unreasonably safe is a 20.09 illustrates that condition that proposition is not to be found in any charge of contributory negligence for the plaintiff. So by the plain definition of an inconsistent verdict, there was no legal inconsistency within this verdict. Justice Harris, you had asked about 120.09 and whether there was anything in that instruction that supported appellant's argument that the jury must find contributory negligence. Not only is there no support, that instruction says the exact opposite, that the jury must determine whether the defendant proved both of those propositions and that if the defendant did not, then the verdict must be for the plaintiff and that the award shall not be reduced. Moving to the defendant's reliance on Lefebvre v. Klemlite, the Supreme Court in Lefebvre did not focus on the concept of plaintiff's contributory negligence. Lefebvre stands for the proposition of adopting the deliberate encounter exception. As to the concept of contributory negligence, the Supreme Court left that concept unchanged. The opinion stated that the adoption of the deliberate encounter exception was not intended to dilute or minimize the concept of comparative fault when proof exists. That means that there are instances where proof may not exist and that the comparative fault remains the defendant's burden and is not established by the plaintiff simply proceeding on the deliberate encounter exception. There is nowhere in Lefebvre and there is nowhere in Illinois law that requires this bright line rule that the appellant proposes. The Supreme Court has consistently stated that a defendant's duty, a defendant's breach, and comparative fault are separate issues and must be considered so. Lefebvre rejects appellant's argument of a legal consistency. In fact, the only legal inconsistency would be the one that the appellant proposes, which is to tell the jury that it must find fault where evidence does not require so. And that brings me to my second point. The evidence supported a finding that Roger Main used ordinary care. It was ADM's burden to show that Roger Main committed an act or an omission and that that constituted negligence. There is no per se act of negligence here. The jury was asked to determine the ordinary care, meaning that the reasonable care a careful person would use under the circumstances shown by the evidence. And that's important here because we're not talking about how... Okay. Sorry, Justice Harris. We're not talking about hypotheticals. We're talking about the evidence. And there's several important facts that must be accepted as true. Roger Main stopped, exited his truck, and encountered wheat mids because ADM instructed him to do so. He stopped, exited his truck, and encountered an open trench because ADM instructed him to do so. These were not choices made independently by Roger Main. In fact, when you look at Roger Main's conduct on ADM's property, it's clear that ADM controlled Roger Main from the moment he entered that property until he left. They told him when to get on the scale, where to stop on the scale, when to move to the loading, where to stop on it, when to shake down his truck, when to move his truck forward, when to move it backwards, when to tarp his vehicle. All of those were the instructions of ADM. And those are the circumstances that are shown by the evidence. Are you able to hear me now? I am, Judge. Justice. Thank you. I'm sorry. I was having trouble with my microphone here. You indicated that the evidence established, or I think you would acknowledge, that the evidence established that your client was aware of the hazard, deliberately encountered the hazard. And then the question goes to whether or not it was reasonable for him to do so. When we look at that question, is there something more than simply ADM's acquiescence to him stopping or getting out of his truck at that point and proceeding to the office? There's a direction by ADM that he get out of his truck at that point. In other words, are you saying that he was required to do what he did or he simply chose to do that when he had the option of pulling his truck forward to a safer location and exiting? Based on Roger Main's own testimony, he clearly stated that he did what he did because that's how he was instructed. When he was cross-examined, well, isn't it true that you could have pulled forward? His answer was, no one instructed me that I could. So he followed the instructions of ADM from the moment he entered their property until he left. And it's more than just ADM providing instructions. ADM created these conditions and provided no relief for Roger Main to adequately safeguard any more than he did. When you look at the charges that ADM made of contributory negligence, one of them was failure to keep a proper lookout. There is no evidence that Roger Main was not paying attention at all times. That is simply unsupported by any of the evidence. The next one is failure to remove the wet wheat mids. Roger Main explained everything he did to remove those mids. He testified, I did the best that I could. That goes to that Roger Main elected to exit his truck and walk a pathway where there are alternatives available. And I think, Justice Harris, that sort of goes back to what your question is. First, he didn't elect to do it. This is how he was instructed. This was only his fifth or sixth time at this facility. And he did everything the same as he was instructed to. So there were no, there were hypothetical alternatives, but the circumstances showed that there were no reasonable alternatives. Meaning that when you enter the property of another, and that person tells you, this is how we expect you to do your job. The expectation of a reasonably careful person is that you will follow those expectations. Now, remember, what was the testimony in regards to the instruction that he was given about getting out of his truck to come up to the office with it? Simply after the blame process had been completed, he was told, okay, come up and get your ticket. Or was it more specific than that? That don't move forward, leave your truck where it's positioned, exit here, and come up to the office. There was not testimony related to what he could not do. The testimony from Roger Main was that specifically ADM employee, Mike Hahn, instructed him where to pull onto the scale. Once he got onto that scale, Mike Hahn instructed him to now come up to the shack and retrieve your paperwork. That was the same instruction that he had received the five other times that he had been on that property. And he had taken those, that same conduct, he had used the same conduct those other five times. And so it gets back to the question of, should the jury ignore the circumstances shown by the seed based on those circumstances? And the question is, did Roger Main exercise ordinary care when he encountered those? And the question is absolutely. Justice Necht had asked in the hypothetical of the delivery encounter regarding the female who holds onto the railing, who walks when he got out of the truck, he took it one step at a time, that he held the handle as long as he could until he had to release it. That's the conduct that an ordinary careful person would use. And these are the same arguments that attorney for the appellant made before the jury. And the jury did not believe that ADM had met its burden. They believe that the evidence was sufficient to support that Roger Main exercise ordinary care. Which brings me to my third and final, the award or a reasonable relationship to the loss. The jury was asked to determine the compensation for the future and past damages of pain and suffering and loss from normal life. The medical testimony, the injury was essentially unchallenged, uncontroverted. This was a permanent injury. There was structural damage to Roger Main's back. There was a disc injury to the L4, L5, L5, S1. An annular tear at the L5, S1 compromised the integrity of his back. Roger Main testified to the immediate pain that he suffered. He explained that he had severe bruising. The jury saw the picture showing the severe bruising across his back. He was unable to urinate immediately after and for the day or so afterwards. He was under the care of orthopedic surgeon for a year and a half following the injury. He received physical therapy and injection. Finally, the medical doctor had released him determining that he was still suffering from the permanent injury, but he reached maximum medical improvement. From there, Roger Main testified that the pain had only increased, had only gotten worse. While he continued to work, his testimony illustrated that he is in fact limited in his work despite there being no official work restriction by the doctor. The evidence showed that after driving for one or two hours, he must stop on his way to St. Louis, get out of the truck to alleviate some of the pain. He described trouble pushing a broom every single day at the job. He had limitations lifting feed bags. He was no longer able to scoop feed. Those are real work restrictions that Roger Main testified to. He described his pain as sharp and burning. In regards to activities, Roger Main testified how the activities are affecting his daily life. The pain affected his daily life from sleeping, from getting out of bed, from going to the shower every single day. He talked about, testified regarding playing with his seven grandchildren. Specific examples that he used that he was no longer able to play baseball, no longer able to kick the ball. He testified that walking his dog, he was unable to do that anymore because the simple jerking of the leash was unbearable. Now, the appellant had used in evidence four one-page questionnaires that Roger had filled out as part of his physical therapy back in 2015. That showed that Roger's pain waxed and waned from no pain at one moment to moderate pain at one moment. But it also showed that at that time in 2015, that the pain was limiting his activities. At different times, he complained about sitting, standing, traveling, looking after himself, his sex life, his social life. All of those are a single snapshot, four different snapshots into Roger's main life in 2015. And while on one hand, it may have shown that there were days where he was feeling all right, there also showed times where he was experiencing moderate pain. And Roger testified that the pain had only gotten worse since then. Lastly, ADM makes mention that there must have existed a prejudice against ADM. There's no evidence to support that. The jury followed the evidence and awarded reasonable compensation for a gentleman who is 61 years old, had suffered for the last five years, and will continue to suffer for another 21 years. The appellant here cannot claim that it did not receive a fair trial. There were no evidentiary errors, no unfavorable rulings against ADM. There were no objections to any of ADM's line of questioning. The jury was properly instructed and followed that evidence as well as the law. The determination that Roger Maine exercised ordinary care is not against the manifest weight of the evidence. The award that the jury rendered bore a reasonable relationship to the loss suffered. And for those reasons, this court should affirm the judgment entered by the lower court. Thank you. Thank you, counsel. We'll hear rebuttal. Thank you. First, with respect to questions asked by Justice Harris, counsel overstates the evidence regarding ADM instruction regarding where and what to park. The testimony of Maine was on the first time he was there. He was told when he was at the end of the scale after he had weighed to get out, walk the 80 feet, come get his ticket. The fact that he may or may not have done that every other visit, that's what Roger Maine testified to. But on cross-examination, exploring what was the scope of that alleged instruction, we asked, did anybody tell you that you could not pull forward? In their brief, they cut off that, A, whether he could do it, but B, he says that no one said that I could. And then the next question was, did anyone at ADM ever tell you you could not pull forward the simple act of six to 10 feet to avoid the condition? With regard to the damage issues, there is, first, no economics in this case, no proof of a single economic loss, no evidence of economics presented. The suggestion that there was work restriction or limitation, he never missed a day of work in the five years, not quite, four and a half to four and three quarters years from date of accident to date of trial. No work missed. No doctor ever put him on a work limitation or restriction. He defined the physical demands of his job. He did them. He acutely went to doctors and reported de minimis to no pain or disruption of normal life. Remote from the occurrence, he does not go to doctors, and at trial says he now is hurting. That, those are all the admissions and testimony of Roger Maine. We get a $300,000 pain and suffering claim when he's never been on a pain prescription, never missed a day of work, has a pathology in the low back with pre-existing degeneration in the low back that is expected to cause discomfort upon mechanical loading, except that in every questionnaire when he went to doctors, he denied any pain with lifting weights or otherwise mechanically loading the back. There's no benchmark as in the tyranny factors, the six tyranny factors, none of them have support. There is no permanent regular issue with result to his pathology, no medical bills passed in future, no evidence of future acceleration of a pathology as a result of this occurrence. There is no bright line test when dealing with the excessiveness of damages, but you cannot ignore an award that is so unmoored from any evidence to support a very large number. The $150,000 in loss of normal life, there is zero evidence of what his baseline was before this when he's walking his dog, pulls on the chain, it hurts his back. But we have complaints that he makes episodically, but the scope and the amount of the damages far exceeds the quantum of evidence to explain it. That's always a difficult, deference to a jury does not mean disregard for the evidence. We recognize that a manifest weight finding on damages is a tall order for an appellant, but this is so unmoored from the evidence and the evidence are the admissions of the plaintiff, not conflicting testimony from various witnesses. The final, is there a prejudice that informs this verdict? You never know, a juror never admits that. You look at the totality of the circumstances, a verdict that ran away, a finding of no fault under the facts presented, those infer or inform a jury that harbored a strong prejudice either against ADM or possibly its attorney. But nonetheless, the result is unmoored from the evidence in both fault and in damages. And for those reasons, we respectfully request that on the issue of fault for a new trial, for either any of the reasons asserted, or if only damages are an issue for an appropriate remediator, which would be within the appellate court's discretion. Thank you. Thank you, counsel. We'll take this matter under advisement and recess until our next case.